# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| REEFER SYSTEMS, INC. and WILLIAM WILLETT,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>SOUTHARD FINANCIAL, LLC, KELLY FINNELL, and EXECUTIVE FINANCIAL SERVICES, INC.,<br><br>　　　　Defendants. | CASE NO. _____<br><br>**COMPLAINT**<br>**AND DEMAND FOR**<br>**JURY TRIAL** |

Plaintiffs Reefer Systems, Inc. and William Willett, for their Complaint against Defendants Southard Financial, LLC, Kelly Finnell, and Executive Financial Services, Inc., allege and state as follows:

## INTRODUCTION

1. This action arises out of the creation, implementation, valuation, and application of the Employee Stock Ownership Plan ("ESOP") for Reefer Systems, Inc. ("Reefer"). Reefer and its President William Willett ("Willett), entered into agreements with Defendants Southard Financial, LLC ("Southard Financial"), Kelly Finnell ("Finnell"), and Executive Financial Services, Inc. ("EFS"), relating to the creation, implementation, valuation, and application of the ESOP for Reefer employees. Defendants were negligent, fraudulently concealed information, and breached their contracts relating to the valuation and other services in connection with the ESOP.

## THE PARTIES

2. Reefer Systems, Inc. is a corporation organized and existing pursuant to the laws of the State of Nebraska with its corporate headquarters located in Douglas County, Nebraska.

3. William Willett, an individual and the President of Reefer Systems, Inc., is a resident of Washington County, Nebraska.

4. Defendant, Southard Financial, LLC, is a Tennessee limited liability company with its principal place of business in Memphis, Tennessee, and was at all relevant times engaged in the business of performing services including, without limitation, the valuation of businesses and specifically the valuation of stock held in Employee Stock Option Plans. Southard Financial, LLC transacted business in Nebraska.

5. Defendant, Kelly Finnell, an individual, who upon information and belief, resides in Tennessee. Kelly Finnell is the President of Defendant, Executive Financial Services, Inc., and transacted business in Nebraska.

6. Defendant, Executive Financial Services, Inc., is a Tennessee corporation with its principal place of business in Memphis, Tennessee, and was at all relevant times engaged in the business of consultation regarding Employee Stock Ownership Plans. Executive Financial Services, Inc. transacted business in Nebraska.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy, exclusive of interest and costs, exceeds the required jurisdictional amount, and there is complete diversity of citizenship between Plaintiffs and Defendants.

2

8. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in the District of Nebraska.

## FACTUAL BACKGROUND

9. In early 2009, Defendant Kelly Finnell presented the idea of establishing an Employee Stock Ownership Plan ("ESOP") to Reefer Systems, Inc. ("Reefer" or the "Company") and William Willett.

10. Finnell traveled to Omaha, Nebraska, in connection with his ESOP proposal to Reefer.

11. At all relevant times, Finnell held himself out as an expert relating to ESOPs.

12. Finnell suggested to Willett and Reefer that Defendant Southard Financial be used for valuation and financial advisory services in connection with the yet-to-be formed ESOP of Reefer.

13. On or around January 21, 2010, Willett, on behalf of Reefer, signed an agreement with Southard Financial to provide valuation and financial advisory services for the yet-to-be formed ESOP, a true and correct copy which is attached hereto as Exhibit "A" and incorporated herein by this reference. Willett signed this agreement in Nebraska.

14. At all relevant times, Southard Financial held itself out as an expert relating to valuation and financial advisory services for ESOPs with a national practice.

15. The agreement between Reefer and Southard Financial provided that Southard Financial would issue an adequate consideration/financial feasibility opinion for the initial ESOP transaction, and that the opinion would speak to the terms of the entire ESOP transaction (price, interest rate on ESOP debt, and other terms).

16. The agreement between Reefer and Southard Financial additionally provided that the valuation opinion would be prepared under the guidelines provided for in Internal Revenue Service Revenue Ruling 59-60.

17. On or around April 21, 2010, Finnell provided Willett with an engagement agreement for his ESOP implementation services through his Company, Executive Financial Services, Inc. ("EFS"), a true and correct copy of which is attached hereto as Exhibit "B" and incorporated herein by this reference. Finnell acted as agent of EFS at all times.

18. Willett accepted the agreement on behalf of Reefer with EFS in Nebraska.

19. The agreement between Reefer and EFS provided that EFS would perform several consulting services including, without limitation: assisting with the creation and coordination of the "ESOP Team" which included a valuation expert (appraiser); and drafting the ESOP document and Summary Plan Description and submitting the ESOP to the IRS requesting a Favorable Determination Letter.

20. Finnell drafted the ESOP Plan Documents, including the Plan itself, the Trust Agreement, and the Stock Purchase Agreement.

21. Finnell and EFS failed to obtain a Favorable Determination Letter from the IRS.

22. On or around December 13, 2010, Daniel P. Bracht was appointed as the Trustee of the ESOP Trust.

23. On or around December 17, 2010, the ESOP was executed in Nebraska for the benefit of Reefer's Nebraska employees. The ESOP Plan Document specifically provided the following under Article VI, Section 6.1, Valuation of the Trust Fund:

> The Administrator shall direct the Trustee, as of each Valuation Date, to determine the net worth of the assets comprising the Trust Fund as it exists on the Valuation Date. In determining such net worth, the Trustee shall value the assets comprising the Trust Fund

at their fair market value (or their contractual value in the case of a Contract or Policy) as of the Valuation Date and shall deduct all expenses for which the Trustee has not yet obtained reimbursement from the Employer or the Trust Fund.

24. On December 17, 2010, Southard Financial issued a Fairness Opinion to Daniel Bracht, the Trustee of the ESOP, in Nebraska. In the Fairness Opinion, Southard Financial opined that the stock sale to the ESOP of 30% of the Company for $10 million does not exceed the fair market value of Company stock as of December 17, 2010. A true and correct copy of the Fairness Opinion is attached hereto as Exhibit "C" and incorporated herein by this reference.

25. On or around August 26, 2011, Mark Orndorff of South Financial requested Kelly Finnell's assistance via email regarding the valuation for Reefer as of December 31, 2010. In the email, Orndorff stated the following:

> I am in the process of providing Reefer Systems (Midland Carrier Transicold) with an update valuation as of December 31, 2010.
>
> I am running into the same type of issue we had with Security Seed, where we valued [t]he company on a control basis for a minority purchase under the assumption that the plan would specify that all future valuations would be on the same level.
>
> Doug and I were just looking at the plan document and it does not say that.
>
> Is this something that you can help us with?
>
> We would prefer not to have to change the valuation methodology since that would result in a significant drop in value.

26. On or around August 29, 2011, Finnell sent Orndorff what purported to be a page from the ESOP Plan Document containing the following language under Article VI, Section 6.1, Valuation of the Trust Fund:

> When "valuing the assets comprising the Trust Fund at their fair market value, "the Trustee shall not apply a "minority interest

discount" or "discount for lack of marketability" when valuing Company Stock.

27. The ESOP Plan document never contained the language set forth in paragraph 26 above.

28. On or around October 30, 2013, the United States Department of Labor ("DOL"), through the Employee Benefits Security Administration ("ESBA"), sent Reefer an audit letter notifying it of an audit of Reefer's ESOP Plan.

29. In August of 2015, Plaintiffs learned that the DOL was taking the position that the initial valuation established by Southard Financial was overstated by millions of dollars.

30. Prior to August 2015, Plaintiffs did not discover and reasonably could not have discovered their cause of action against Defendants.

## FIRST CLAIM FOR RELIEF
**(Professional Malpractice – Southard Financial)**

31. For their first claim for relief, Plaintiffs incorporate the allegations contained in paragraphs 1 through 30 as if fully set forth herein.

32. Under the terms of the agreement, Southard Financial was to provide appraisal services for the Employee Stock Ownership Plan of Reefer Systems, Inc. Southard Financial was aware the Plaintiffs would rely on the information communicated in such valuations.

33. All of the Valuations state that such documents were to be used in connection with valuing the Company shares held within the ESOP and periodic stock transactions within the Plan.

34. Southard Financial had the duty to use the skill and knowledge ordinarily possessed by others to perform such valuation services who are in good standing within the

profession or trade in the same or similar localities and create a supportable, correct valuation of the Company stock for purposes of use within the ESOP.

35. Southard Financial was negligent in the performance of its services for Plaintiffs in the following particulars:

    a. Southard Financial failed to perform the valuation in accordance with the standards for those who hold themselves out as having special skills, knowledge, training, or experience; and

    b. Southard Financial failed to exercise the requisite skill and care in choosing the correct methodology to value the Company stock or in its execution of the methodology in valuing the Company stock.

36. As a direct and proximate result of the negligence of Southard Financial, the Plaintiffs have been damaged in an amount in excess of $1,000,000.00.

WHEREFORE, Plaintiffs pray for judgment in their favor and against the Defendant Southard Financial for special damages, general damages, for interest provided by law, for attorneys' fees and court costs, and for such other, further relief this Court deems just and equitable.

### SECOND CLAIM FOR RELIEF
**(Negligent Misrepresentation – Southard Financial)**

37. For their second claim for relief, Plaintiffs incorporate the allegations contained in paragraphs 1 through 36 as if fully set forth herein.

38. Southard Financial supplied Plaintiffs with false information that was intended for their guidance.

39. Plaintiffs reasonably and justifiably relied upon the information supplied by Southard Financial in the Valuations, which they did not know was false.

40. Southard Financial failed to exercise reasonable care and competency in supplying the Valuations.

41. As a result of Plaintiffs' reasonable and justifiable reliance on the Valuations, the Plaintiffs have been damaged in an amount in excess of $1,000,000.00.

WHEREFORE, Plaintiffs pray for judgment in their favor and against the Defendant Southard Financial for special damages, general damages, for interest provided by law, for attorneys' fees and court costs, and for such other, further relief this Court deems just and equitable.

### THIRD CLAIM FOR RELIEF
**(Breach of Contract – Southard Financial)**

42. For their third claim for relief, Plaintiffs incorporate the allegations contained in paragraphs 1 through 41 as if fully set forth herein.

43. Pursuant to the terms of the agreement, Southard Financial agreed to perform the valuation services in accordance with the standards for those who hold themselves out as having special skills, knowledge, training or experience.

44. Southard Financial breached the agreement in the ways identified above.

45. Plaintiffs performed all conditions precedent and substantially performed their duties under the agreement.

46. As a direct and proximate result of Southard Financial's breaches of the agreement, the Plaintiffs have been damaged in an amount in excess of $1,000,000.00.

WHEREFORE, Plaintiffs pray for judgment in their favor and against the Defendant Southard Financial for special damages, general damages, for interest provided by law, for attorneys' fees and court costs, and for such other further relief this Court deems just and equitable.

## FOURTH CLAIM FOR RELIEF
### (Professional Malpractice – Kelly Finnell & EFS)

47. For their fourth claim for relief, Plaintiffs incorporate the allegations contained in paragraphs 1 through 46 as if fully set forth herein.

48. Plaintiffs engaged Kelly Finnell and Executive Financial Services, Inc. ("EFS") to create an Employee Stock Option Plan ("ESOP"). Finnell and EFS were aware the Plaintiffs would rely upon their opinions and the information communicated regarding the ESOP.

49. Finnell and EFS had the duty to use the skill and knowledge ordinarily possessed by others to perform such services, are in good standing within the profession or trade in the same or similar localities, and create a correct and lawful ESOP.

50. Finnell and EFS were negligent in the performance of their services for Plaintiffs in the following particulars:

　　a. Finnell and EFS failed to obtain a Favorable Determination Letter from the IRS; and

　　b. upon information and belief, Finnell and EFS knew the valuation and fairness opinion provided by Southard Financial was unlawful and incorrect and failed to inform Plaintiffs of this fact.

51. As a direct and proximate result of the negligence of Finnell and EFS, the Plaintiffs have been damaged in an amount in excess of $1,000,000.00.

WHEREFORE, Plaintiffs pray for judgment in their favor and against the Defendants Finnell and EFS for special damages, general damages, for interest provided by law, for attorneys' fees and court costs, and for such other, further relief this Court deems just and equitable.

## FIFTH CLAIM FOR RELIEF
### (Negligent Misrepresentation – Kelly Finnell & EFS)

52. For their fifth claim for relief, Plaintiffs incorporate the allegations contained in paragraphs 1 through 51 as if fully set forth herein.

53. Finnell and EFS supplied Plaintiffs with false information that was intended for their guidance.

54. Plaintiffs reasonably and justifiably relied upon the information supplied by Finnell and EFS regarding the ESOP, which they did not know was false.

55. Finnell and EFS failed to exercise reasonable care and competency in supplying information regarding the ESOP.

56. As a result of Plaintiffs' reasonable and justifiable reliance on the information regarding the ESOP, the Plaintiffs have been damaged in an amount in excess of $1,000,000.00.

WHEREFORE, Plaintiffs pray for judgment in their favor and against the Defendants Finnell and EFS for special damages, general damages, for interest provided by law, for attorneys' fees and court costs, and for such other, further relief this Court deems just and equitable.

## SIXTH CLAIM FOR RELIEF
### (Fraudulent Concealment – Southard Financial, Kelly Finnell & EFS)

57. For their sixth claim for relief, Plaintiffs incorporate the allegations contained in paragraphs 1 through 56 as if fully set forth herein.

58. In an effort to conceal their overstatement of the initial valuation relating to the ESOP, Defendants conspired to create a false document and fraudulently concealed the fact that the initial valuation was overstated and not consistent with the ESOP plan documents.

59. Defendants had knowledge that they created a false document.

60. The false document was not within the reasonably diligent attention, observation, and judgment of the Plaintiffs.

61. Defendants suppressed or concealed the false document with the intention that Plaintiffs be misled as to the true condition of the ESOP.

62. Plaintiffs were misled as to the true condition of the ESOP.

63. As a result of Defendants' concealed false document, the Plaintiffs have been damaged in an amount in excess of $1,000,000.00.

WHEREFORE, Plaintiffs pray for judgment in their favor and against the Defendants Southard Financial, Finnell, and EFS for special damages, general damages, for interest provided by law, for attorneys' fees and court costs, and for such other, further relief this Court deems just and equitable.

## SEVENTH CLAIM FOR RELIEF
**(Breach of Contract – Kelly Finnell & EFS)**

64. For their seventh claim for relief, Plaintiffs incorporate the allegations contained in paragraphs 1 through 63 as if fully set forth herein.

65. Pursuant to the terms of the agreement, Kelly Finnell and EFS agreed to perform consultation services in accordance with the standards for those who hold themselves out as having special skills, knowledge, training or experience.

66. Finnell and EFS breached the agreement in the ways identified above.

67. Plaintiffs performed all conditions precedent and substantially performed their duties under the agreement.

68. As a direct and proximate result of Finnell and EFS's breaches of the agreement, the Plaintiffs have been damaged in an amount in excess of $1,000,000.00.

WHEREFORE, Plaintiffs pray for judgment in their favor and against the Defendants Finnell and EFS for special damages, general damages, for interest provided by law, for attorneys' fees and court costs, and for such other further relief this Court deems just and equitable.

### DEMAND FOR A TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Local Rule 38.1, the Plaintiffs demand a trial by jury on all issues triable of right by a jury to be held in Omaha, Nebraska.

DATED this 24th day of February, 2016.

        REEFER SYSTEMS, INC. and WILLIAM WILLETT, Plaintiffs


By: /s/ Ruth A. Horvatich
    William F. Hargens, NE #16578
    Ruth A. Horvatich, NE #24776
    McGrath North Mullin & Kratz, PC LLO
    First National Tower, Suite 3700
    1601 Dodge Street
    Omaha, Nebraska 68102
    (402) 341-3070
    (402) 341-0216 fax
    whargens@mcgrathnorth.com
    rhorvatich@mcgrathnorth.com

ATTORNEYS FOR PLAINTIFFS